**Everett HADIX, et al., Plaintiffs,**

v.

**Perry M. JOHNSON, et al., Defendants.**

**Civil Action No. 80–73581.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 4, 1996.

Patricia A. Streeter, Detroit, MI, for Plaintiffs.

Susan Przekop–Shaw, Leo Friedman, Assistant Attorneys General, Lansing, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

Plaintiffs' counsel in this case request fees for work performed between January 1, 1996 and June 30, 1996 pursuant to established billing procedures in this case. Defendants contend that hours billed for work performed after April 26, 1996, the enactment date of the Prison Litigation Reform Act, Pub.L. No. 104–134, 1996 ("the Act" or "PLRA"), are subject to its limitation on fees.

Amending 42 U.S.C. § 1997e, the provision of the PLRA at issue stipulates:

No award of attorney's fees in an action [brought by a prisoner in which attorney fees are authorized] shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18, United States Code, for payment of court-appointed counsel.

§ 803(d). The hourly rate for court-appointed attorneys is $60 per hour unless the Judicial Conference of the United States determines that a higher rate not in excess of $75 per hour is justified for a particular circuit. 18 U.S.C. § 3006A(d)(1). The rate of pay for plaintiffs' counsel in this case has been established at $150 per hour. Under the PLRA, their rate would be reduced to $112.50 per hour (150% of the $75 maximum hourly rate for time expended in the Eastern District of Michigan).

The PLRA was enacted eleven years after a consent judgment was entered in this case. The issue before me is whether the PLRA's limitation on attorney fees applies to work done on this case after the effective date of the Act.[1]

For reasons set forth below, I conclude that the PLRA-mandated cap on attorney fees applies to this case for work performed after April 26, 1996. As to the only other source of contention, 23 hours' work provided by plaintiffs' counsel in preparation of a brief regarding the constitutionality of the PLRA, I find that the length of time involved was not excessive.

### II. APPLICATION OF THE PLRA TO ATTORNEYS' FEES

In Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court clarified how to resolve the conflict between the presumption that a statute should not be applied retroactively and the presumption that a court "should apply the law in effect at the time it renders its decision." Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

When a statute affects events which transpired in the suit before its enactment, a "court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." Landgraf, 511 U.S. at ——, 114 S.Ct. at 1505.

The PLRA is comprised of ten sections, only one of which (§ 802) specifies that it is to be applied to pending cases. The provisions that limit attorney fees are found in § 803 of the Act, which, plaintiffs contend, signals the congressional intent for prospective application. As further evidence, plaintiffs point out that attorney fees provisions were originally included in § 802 of the Act, but were removed from that section in the final version of the bill. Application of the PLRA to this case, they argue, would specifically read into the statute the very fee limitation Congress eliminated.

The negative inference plaintiffs urge me to draw is too attenuated to support a finding of congressional intent. In Hutto v. Finney,

---

1. In an opinion and order dated May 30, 1996, I held that the PLRA's provisions on attorney fees do not apply to work performed before its enactment.

437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), a prison conditions case in which attorney fees were granted against a state government, the Court referred to express indications of congressional intent in the legislative history to uphold the award of fees. *Id.* at 694, 98 S.Ct. at 2575. But in *Landgraf,* the Court tempered its reliance on statements made in the Congressional Record in observing that conflicting opinions more closely reveal partisan statements than congressional intent. *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1495. Here there are no statements at all concerning the issue of retroactivity; there are only conflicting placements of a provision in a bill as it made its way through Congress. This fact is insufficient to evince congressional intent.

Absent legislative guidance, my next inquiry is whether application of the statute would have a retroactive effect. If so, it will not be applied to this case. To determine whether a statute operates retroactively,

> the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1499. Factors to be considered to determine a statute's retroactive effect are whether it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.,* 511 U.S. at ——, 114 S.Ct. at 1505.

Plaintiffs' counsel have been entitled to fees in this case, and a specific system of payment and rate of pay has been established. Changing the rate from $150 to $112.50 per hour, according to plaintiffs, is a drastic reduction over market rates, particularly in light of the spiraling litigiousness of this case in the last two years. They contend that application of § 803(d) would fail to protect their "reasonable reliance" and "settled expectations" in having their counsel paid comparably to the prevailing market rate and that such a change would occur without providing them "ample notice" since this case was filed so long before the introduction of the PLRA.

It is true that "settled expectations should not be lightly disrupted." *Id.,* 511 U.S. at ——, 114 S.Ct. at 1483. As explained by the Court in *Landgraf,* a free and changing society needs to be protected from the danger of arbitrary or vindictive power exercised over past conduct. *Id.* at ——–——, 1497–98. This principle was encapsulated in the Supreme Court's admonition that a law should not be applied retroactively if doing so "would result in manifest injustice." *Bradley,* at 711, 94 S.Ct. at 2016.

I conclude that this Act would not impair plaintiffs' or their counsel's rights to the extent that its application would be impermissibly retroactive. I am guided by the Supreme Court's observation that application of a statute which "authorizes or affects the propriety of prospective relief" is not retroactive, *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1501, the rationale being that " 'relief by injunction operates *in futuro* ' and that plaintiff has no 'vested right' in the decree entered by the trial court." *Id., citing American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921).

The rate of pay in this case has been adjusted in keeping with the prevailing market rate. Considering the fact that court-appointed counsel in this district are paid the maximum amount allowed by statute, and the fact that the PLRA's cap is 150% of that amount, I cannot say that Congress's intent to limit plaintiffs' counsel to $112.50 per hour is so fundamentally unfair as to result in manifest injustice. Nor can I say that this legislation unreasonably disrupts settled expectations. "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." *Id.,* 511 U.S. at ——, n. 24, 114 S.Ct. at 1499, n. 24, *quoting* L. Fuller, *The Morality of Law,* 51–62 (1964).

### III. *23 HOURS IN DISPUTE ON THE PLRA BRIEF*

Defendants object to 23 hours of attorney fees (17.2 hours for Patricia Streeter and 5.8 hours for Michael Barnhart) accumulated in preparing a brief in response to defendants' motion to terminate the consent decree in this case pursuant to the PLRA. It has been acknowledged by both parties that the brief is based on a memorandum of law prepared by the Legal Aid Society— Prisoner Rights Project and submitted in *Benjamin v. Jacobsen*, United States District Court (S.D.N.Y.) No. 75–Civ–3073. Claiming that only seven original sentences were added by plaintiffs' counsel, defendants object to the 23 hours spent as unreasonable.

The brief submitted to this court was 83 pages long, presented three distinct constitutional arguments, and included a detailed factual affidavit explaining facts from the 16-year history of this case. I note that without the memorandum at their disposal plaintiffs' counsel would have been required to spend far greater than 23 hours to prepare an adequate response. Considering the magnitude and complexity of this issue, I believe that 23 hours of preparation time is well within the realm of reason.

### IV. *CONCLUSION*

**IT IS ORDERED** that the PLRA's limits on attorney fees apply to this case for work performed after the PLRA's enactment on April 26, 1996.

**IT IS FURTHER ORDERED** that plaintiffs re-submit fee requests for work performed between January 1, 1996 and June 30, 1996 in which counsel's fees are limited to $112.50 per hour for time worked after April 26, 1996.

**IT IS FURTHER ORDERED** that upon receiving this revised request defendants pay plaintiffs' counsel for the contested 23 hours' work provided.

**IT IS SO ORDERED.**