Everett HADIX, et al., Plaintiffs,

v.

Perry M. JOHNSON, et al., Defendants.

No. 80–73581.

United States District Court,
E.D. Michigan,
Southern Division.

March 18, 1999.

Neal Bush, Detroit, MI, Jeanne E. Mirer, Roy, Shecter, Bloomfield Hills, MI, Larry W. Bennett, Cox, Hodgman, Troy, MI, Michael J. Barnhart, Detroit, MI, Deborah A. LaBelle, Ann Arbor, MI for Plaintiffs.

Thomas C. Nelson, Michigan Department of Attorney General, Lansing, MI, Donald S. McGehee, Michigan Department of Attorney General, Tort Defense Division, Lansing, MI, Theodore E. Hughes, Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, Leo H. Friedman, Michael A. Nickerson, Michigan Department of Attorney General, Corrections Division, Lansing, MI, Richard M.C. Adams,Susan Przekop-Shaw, Michigan Department of Attorney General Corrections Division, Lansing, MI, Jann R. Baugh, Michigan Department of Attorney General, International Trade & Agriculture Div., Lansing, MI, Ann Arbor, MI, Barbara A. Schmidt, Michigan Department of Attorney General, Mental Health Division, Lansing, MI, Lisa C. Ward, Lansing, MI, for Defendants.

### OPINION AND ORDER and ORDER OF TRANSFER

FEIKENS, District Judge.

### I. INTRODUCTION

This case continues to be subject to a defense motion to terminate its consent decree. Two state prison cases have been on my docket for many years. This case involves male inmates at the State Prison of Southern Michigan (SPSM) in Jackson. A similar case, *Glover et al. v. Johnson,*

Case No. 77–71229, involves female inmates in Michigan prisons. In that case, the female inmates prevailed and remedial orders were entered to bring about parity. Recently in that case, I filed an opinion which brings it, hopefully, to a conclusion. I have long sought finality in both cases.

Congress has stated, in the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626, that consent decrees which have been entered in prison cases in federal courts should be reconsidered and terminated if the statutory indications are met.

Commenting on this statute, the United States Court of Appeals for the Sixth Circuit (Sixth Circuit) has stated that "The interpretation and application of law to fact and the ultimate resolution of prison cases remain at all times with the judiciary." *Hadix v. Johnson,* 133 F.3d 940, 943 (6th Cir.1998). The consent decree in this case provides for an Out–of–Cell Activity Plan and for a Break–Up Plan, which seeks to correct alleged constitutional violations in the confinement of inmates.

SPSM was constructed many years ago when it was believed that it would be cost efficient to house all male inmates in one very large facility. It has frequently been referred to as the "Big House." It became apparent over time that many confinement problems were caused by housing all prisoners in one facility; consequently, the Break–Up Plan provided for in the consent decree sought to correct these conditions. The prison is now being restructured so that there will be five autonomous facilities, hereinafter referred to as Facilities A, B, C, D and E.

I conclude that where compliance with the consent decree has been achieved, those portions of the consent decree should be terminated. Heretofore, I have begun to do so.[1] I continue that process in this opinion and order. The Break–Up Plan (the Plan) in the consent decree has brought about compliance in many instances, and it is realistic to provide for termination of those aspects of the Plan which have achieved their goals.

## II. *BACKGROUND*

The history of this case is stated in the previous decisions of this court. *See, Hadix v. Johnson,* 947 F.Supp. 1113 (E.D.Mich.1996); 947 F.Supp. 1100 (E.D.Mich.1996); 933 F.Supp. 1360 (E.D.Mich.1996); 879 F.Supp. 743 (E.D.Mich.1995); 896 F.Supp. 697 (E.D.Mich.1995); 792 F.Supp. 527 (E.D.Mich.1992); 740 F.Supp. 433 (E.D.Mich.1990); 712 F.Supp. 550 (E.D.Mich.1989); 694 F.Supp. 259 (E.D.Mich.1988).

In 1980, plaintiffs, inmates at SPSM, brought a class action against various state prison officials pursuant to 42 U.S.C. § 1983. The parties entered into a court-approved consent decree designed to remedy the constitutional violations alleged in plaintiffs' complaint in 1985.[2] In 1996, defendants filed a motion to terminate the consent decree pursuant to the Prison Litigation Reform Act, 18 U.S.C. § 3626(b)(2)–(3). On November 1, 1996, I denied defendants' motion to terminate (947 F.Supp. 1100), finding that the relevant provisions of the Prison Litigation Reform Act violated the separation-of-powers doctrine. On January 13, 1998, the Sixth Circuit reversed, *Hadix v. Johnson,* 133 F.3d 940, 943. That court concluded that the PLRA is constitutional and that the powers of the federal courts are not restricted as the defendants contended. Accordingly, the

---

1. *See* Order Denying Defendant's Motion Seeking Modification Of The 1985 Out–Of–Cell Activity Provision Of The Hadix Consent Decree, April 7, 1995.

2. The consent decree states:
   The complaint in this case alleges that the rights of the Plaintiffs secured by the First, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution have been violated. *The provisions contained herein are intended by the parties to assure the constitutionality of the conditions* under which prisoners are incarcerated at SPSM–CC. (emphasis added).

case has been remanded to me for consideration of the merits of defendants' motion to terminate.

## A. *FACILITIES SUBJECT TO THE CONSENT DECREE*

The consent decree and concomitant Break–Up Plan encompass the former Central Complex of the State Prison of Southern Michigan. According to the Plan, the Central Complex will be divided into five mostly autonomous facilities, Facilities A through E. These facilities are designated in the plan as follows:

FACILITY A: Physically comprised of the former Egeler Facility, this facility is designated to receive, process, evaluate, classify and place incoming male State prisoners. This facility also houses and provides services for prisoners from throughout the State who are receiving short-term medical treatment rendered through Duane L. Waters Hospital, and provides custody, security and support services for the hospital.

FACILITY B: This facility is designated to house and provide services for prisoners classified as Level IV inmates, including prisoners in need of protective or segregated custody.

FACILITY C: This facility is designated to house and provide services for prisoners classified as Level V inmates, including prisoners in need of administrative segregation.

FACILITY D: This facility is designated to house and provide services for prisoners classified as Level I inmates, including sex offenders. Services for these prisoners include participation in public works programs and jobs outside the security perimeter when appropriate.

FACILITY E: This facility is designated to provide centralized food production, laundry, warehouse, vehicular maintenance, and some building maintenance operations to serve Facilities A through D.

Of these facilities, Facility B is the first prison to be opened. The renovations required under Section VIII., Management, of the consent decree have been completed. It consists of former cellblocks 4 and 5, and provides exercise, medical and dental areas, a school, a library, a dining hall and a gym, services available to inmates classified at security level four.

Defendants have repeatedly contended that these facilities, as they are completed, are "new" facilities and not part of the "Central Complex," and thus are not subject to the terms of the consent decree. In particular, defendants have argued that Facility B, because it is now complete, is not subject to the terms of the consent decree. I have previously rejected this notion:

> Defendants also introduce the notion that the facilities resulting from the implementation of Section VIII of the Decree are not subject to the jurisdiction of the Hadix Consent Decree. However, defendants are obligated to implement all sections of the Consent Decree, including Section VIII, until, pursuant to Section XII of the Decree, the court terminates jurisdiction. Furthermore, I previously ordered, in the Order accepting Consent Judgment (dated May 13, 1985), that physical or operational modification of the facilities located within the walls of SPSM does not affect the jurisdiction of this court, especially when the process of modification was anticipated by and conducted under the jurisdiction of the court.

*Hadix v. Johnson,* 896 F.Supp. 697, 704 n. 8 (E.D.Mich.1995). In that opinion, I also ordered that all references in the Out–of–Cell Activity Plan to "Central Complex" be changed to "Facilities subject to the Hadix Decree" in an attempt to settle that matter. *Id.,* at 705. I reiterate that Facilities A–E, including the completed Facility B, are *Hadix* facilities, subject to the consent decree.

## III. *DEFENDANTS' MOTION TO TERMINATE*

I now turn to defendants' motion to terminate the consent decree as it pertains to these facilities.

### A. *Facility A*

Despite the deadline and timetable for completion, which I ordered based on defendants' proposal and their agreement, the major work on Facility A has not yet begun. In a letter dated January 8, 1999,[3] defendants have proposed a substitute plan, to replace the court-approved plan, and have stated that renovations to this facility are subject to obtaining legislative approval for funding.

This is most troubling, since the defendants had previously represented to me at the time of the original project approval that funds were available for the entire project. Furthermore, there is already in place an agreement by the defendants, expressly stated by the then-director of the Department of Corrections, Kenneth McGinnis, that if modifications of plans for this (or any other) facility were necessary, those modifications could be approved by the SPSM Decentralization Team (SDT)[4], and further consideration by me would be unnecessary. I have already authorized SDT to approve such changes.

3. The January 8, 1999, letter and the attached proposal are included as Appendix A.

4. The SDT is comprised of three representatives chosen by defendants and one representative chosen by plaintiffs.

In any event, because of the special nature of this facility, I find that the evaluation of the adequacy of defendants' alternative proposal is best left to a determination of this matter at an upcoming health care compliance hearing before Judge Enslen. Evaluation of defendants' proposed alternatives is primarily a medical issue, involving assessments of the effect that such proposed changes would have on unclassified prisoners and prisoners with severe or chronic medical conditions who are housed in this facility.

Jurisdiction, therefore, is transferred to Chief Judge Enslen of the Western District of Michigan, subject to his approval.[5]

### B. *Facility B*

On June 25, 1998, the Court Monitor, Dr. F. Warren Benton, filed a Compliance Evaluation as to the renovations of the former 4 and 5 cellblocks and related programs. Facility B, which is also known as the Southern Michigan Correctional Facility, is currently re-occupied and operational. Based on recommendations contained in the Court Monitor's report and the responses filed by the parties, I conducted an on-site hearing on December 10, 1998. At the hearing, each of Dr. Benton's findings was reviewed.

I find that there has been substantial compliance with nearly all of the provisions of the consent decree; the provisions of the consent decree are therefore terminated with the following exceptions:

First, section I, paragraphs P (Water Temperature), Q (Temperature in Housing), and S (Ventilation) are not terminated. These paragraphs read as follows:

#### P. *Water*

5. On June 5, 1992, this court transferred provisions of this case relating to medical and mental health care to Judge Enslen because of their potential relationship to a related case.

Hot water (within 6° F of 110° F) and cold water shall be provided in all cells, sinks and showers.

Q. *Temperatures*

Inmates will be housed in cells where the temperature is healthy and safe in any season. Temperatures in activity areas similarly shall be maintained healthy and safe. The Department will monitor and record the temperatures on housing unit base floors and highest galleries, and take whatever reasonable steps are necessary to assure safe and healthy temperatures.

S. *Ventilation*

The Department, within fourteen (14) months after the entry of the Judgment, shall provide ventilation of seven (7) cubic feet per minute per inmate. In summer months, a mechanical exhaust system shall operate to exhaust a total of 54 cubic feet per minute in each cell block.

These paragraphs set forth the general and technical requirements for safe and healthy prison conditions regarding both water and air temperature, as well as air quality. I conclude that as of December 10, 1998, problems still exist in each of these areas. There is not, however, sufficient evidence whether the continued noncompliance constitutes serious health risks of constitutional dimension to the prisoners housed in Facility B. To determine potential harmful effects on prisoners, or sufficiency of attempts to mitigate these possible harmful effects, evidence must be produced as to the extent of non-compliance (for example, how high are the temperatures in the summer months), the medical condition of any prisoners affected, and the effectiveness of any further efforts to mitigate problems that still exist. Like the issues in Facility A, these issues are essentially medical issues, and can be considered by Judge Enslen at an upcoming health care compliance hearing. Therefore, jurisdiction over these three paragraphs of the consent decree is transferred to Judge Enslen, subject to his approval.

Second, termination of the consent decree with respect to the Break–Up Plan does not affect the Out-of-Cell Activity Plan, referenced in the consent decree in Section IV. paragraph H.2. The Out-of-Cell Activity Plan remains in effect, and will be the subject of a further hearing.

Finally, while the provisions of the Break–Up Plan in the consent decree are terminated with respect to Facility B, it is likely that a final compliance evaluation of Facility E (food service) will require access to Facility B for the purpose of evaluating food service quality associated with Facility A.

## C. *Facilities C, D and E*

Facilities C, D and E, unlike Facility B, have yet to be completed under the provisions of the Break–Up Plan. Nonetheless, under 18 U.S.C. § 3626(b)(3), supervision of these facilities will terminate now, subject to the following three conditions:

(1) Defendants must demonstrate that the renovation projects of Facilities C, D and E have reached a point of inevitability (substantial completion).

(2) If there is a variance from the approved Break–Up Plan, it must be shown to be de minimis, or that the variance has been approved by the SDT.

(3) A hearing must be held demonstrating substantial compliance following the same procedure as has been utilized for the termination of the Break–Up Plan as to Facility B.

This approach meets the requirements of the PLRA, in that without the need for a further hearing to determine whether constitutional violations exist, this procedure, already successfully implemented as to Facility B, provides for minimal intrusion by me, the Court Monitor, or plaintiffs. Compliance can be monitored through the SDT.

I find that these three conditions are the least intrusive, most narrowly drawn conditions on which I can terminate the consent decree. Defendants have been given previous opportunities to terminate the consent decree simply by demonstrating the inevitability of the renovations and assuring me of their substantial compliance, and they need only satisfy the three conditions set out above to terminate the consent decree now.

**IT IS SO ORDERED.**

APPENDIX A

## APPENDIX A

STATE OF MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL

WILLIAM J. RICHARDS
*Deputy Attorney General*

P.O. BOX 30217
LANSING, MICHIGAN 48909

**JENNIFER M. GRANHOLM**
ATTORNEY GENERAL

January 8, 1999

Honorable John Feikens
United States District Court
Eastern District of Michigan
Southern Division
231 Lafayette Blvd.
Detroit, MI 48226

Dear Judge Feikens:

> RECEIVED
>
> JAN 11 1999
>
> JOHN FEIKENS
> U.S. DISTRICT JUDGE
> EASTERN DISTRICT OF MICHIGAN

> RE: *Hadix v Johnson*
> File No. 80-CV-73581-DT
> AG #8801689

Enclosed please find the Reports you had requested at the status conference held in this matter on December 10, 1998.

At that status conference you had requested that the Michigan Department of Corrections provide you, to the extent that it could, its assurance regarding what you have termed the "inevitability" of the completion of the breakup of the Jackson facilities. Toward that end, please be advised that Facility C is presently undergoing construction, and that Plaintiffs have been provided with the drawings for that facility. The Department presently anticipates that construction at Facility C will proceed as outlined in those drawings. Additionally, attached please find two documents entitled "Proposed Renovations to the Egeler Correctional Facility (Facility A)" and "Renovations and Proposed Renovations to the Parnall Correctional Facility (Facility D)" which have been prepared by the Michigan Department of Corrections and which outline the Department's anticipated activity with regard to these facilities.

Please be advised, however, that reference to the Facility C drawings and the attached list of anticipated renovations to Facilities A and D are submitted to you with the understanding that Defendants reserve their right to assert that, this Court never having made a determination regarding the existence of a constitutional violation at the facilities subject to this decree, the breakup plan, and all other remedial relief ordered in this case, violate the Prison Litigation Reform Act in that the relief ordered is not narrowly drawn, extends further than necessary to correct

Honorable John Feikens
Page 2
January 8, 1999

any constitutional violation, and is not the least intrusive means necessary to correct the violation of a federal right. Additionally, the proposed renovations to these two facilities represent the Department's present intentions with regard to those two facilities and should not be regarded as a Plan submitted by the State with regard to future activities at these facilities to which the State will be necessarily bound in the future. Lastly, please be further advised that the anticipated renovations to Facilities A and D outlined in these two documents are, of course, subject to obtaining legislative approval for the funding necessary to accomplish these anticipated renovations.

Very truly yours,

Michael A. Nickerson
Assistant Attorney General
Corrections Division
(517) 335-7021

MAN/akk
Enclosure
c:     Kenneth McGinnis   (Without Enclosures)
       Lucille Taylor
       Marjorie Van Ochten   (Without Enclosures)
       Barbara Hladki   (Without Enclosures)
       Leo H. Friedman   (Without Enclosures)
       Mark W. Matus   (Without Enclosures)
       Michael Barnhart
       Deborah LaBelle
       Patricia Streeter
       Dr. F. Warren Benton
Cases/8801689/Ltr/Feikens/Break-Up

## PROPOSED RENOVATIONS TO THE EGELER CORRECTIONAL FACILITY (FACILITY A)

Set out below are the renovations which the Department believes are necessary for efficient operation of the Egeler Correctional Facility as a reception center. Except where it is indicated that funding is currently available, all renovations are subject to obtaining legislative approval for funding to accomplish them.

- **Security Data Loop—Duress System and Fence System Upgrade**—This involves enhancements to the facility's security systems.
- **Cell Blocks 1, 2 and 3—Ventilation System**—Install access hatches to allow servicing of the ventilation system.
- **Cell Blocks 1, 2 and 3—Plumbing Stacks**—New plumbing stacks will be installed in all three cell blocks. This project is funded for FY 99.
- **Cell Block 3—Electrical Work**—This cell block will be re-wired. This project is funded for FY 99.
- **Handicap Accessible Cells and Shower Area**—Twenty-four handicap accessible cells will be constructed in Cell Block 1 and the shower area will be modified for handicap use.
- **Special Management Cells**—A number of cells will be modified in both Cell Blocks 1 and 2 for use by high security prisoners. The changes will include sol-

id cell fronts, stainless steel toilets and sinks, and high security beds.

- **Modifications to Building 142 (Programs)**—Additional space will be added for intake processing and a sally port will be constructed. The additional space will include holding cells, medical interview rooms, property and clothing storage and processing rooms, and processing areas.

- **Modifications to Building 141 (Food Service)**—Walls will be built to separate the serving lines from the dining area.

- **Modifications to Building 140 (Administration)**—The Control Center will be enlarged and improved, and non-contact visiting booths will be added to the visiting area.

### ORDER OF TRANSFER

In my June 5, 1992 order of transfer, I transferred the mental health provisions and medical health provisions (Sections II.B. and II.A., respectively) of the *Hadix* consent decree to the Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan. Those sections of the consent decree were related to another case before Judge Enslen, *United States v. Michigan,* File No. 1:84:CV:63. I transferred jurisdiction "for the sake of uniformity, and in the hope of attaining finality," and because transfer would "permit Judge Enslen to conduct combined evidentiary hearings" and avoid "duplicative proceedings."

In my March 18, 1999, opinion and order, I considered defendants' motion to terminate the consent decree. I found substantial compliance with some of the provisions of the consent decree and concomitant Break–Up Plan, and those provisions have been terminated. The March 18, 1999 opinion finds, however, that several provisions of the consent decree will require further hearings before the determination can be made as to whether termination is appropriate. Pursuant to 28

U.S.C § 1404(a), I now ORDER that, as to former cell blocks four and five, now known as Facility B, the following provisions of the consent decree are transferred to Judge Enslen in the Western District of Michigan:

I.P. *Water*

Hot water (within 6° F of 110° F) and cold water shall be provided in all cells, sinks and showers.

I.Q. *Temperatures*

Inmates will be housed in cells where the temperature is healthy and safe in any season. Temperatures in activity areas similarly shall be maintained healthy and safe. The Department will monitor and record the temperatures on housing unit base floors and highest galleries, and take whatever reasonable steps are necessary to assure safe and healthy temperatures.

I.S. *Ventilation*

The Department, within fourteen (14) months after the entry of the Judgment, shall provide ventilation of seven (7) cubic feet per minute per inmate. In summer months, a mechanical exhaust system shall operate to exhaust a total of 54 cubic feet per minute in each cell block.

Pursuant to § 1404(a), and in accordance with my March 18, 1999 opinion and order, I also ORDER that, as to Facility A, the determination of the adequacy of defendants' proposed alternatives to the Break–Up Plan is transferred to Judge Enslen.

While these provisions are not "on their face" medical issues, the pertinent legal question in each case will be whether continued noncompliance (or in the case of Facility A, substitution of defendants' proposed alternatives) endangers the health of prison inmates. At an upcoming hearing, Judge Enslen will receive medical evidence from the same expert witnesses who can best address these issues.

ACCORDINGLY, in order to again avoid duplicative hearings and in the hope of attaining finality, Sections I.P, I.Q. and

I.S. as to Facility B as well as defendants' proposed alternatives as to Facility A are transferred to Judge Enslen pursuant to 28 U.S.C. § 1404(a) for further proceedings as he deems appropriate. All other provisions of the *Hadix* consent decree, to the extent that they are not terminated by my March 18, 1999 opinion, remain under the jurisdiction of this court.

**IT IS SO ORDERED.**