compliance with the consent decree, provided that the prospective relief set forth in the decree is necessary, narrowly drawn, and the least intrusive means to correct the violations. If the district court is unable to issue a ruling within the timetable we have specified, i.e., within 120 days from the date this opinion issues, then the case shall be assigned to another district judge whose calendar permits a prompt resolution of the matter. *Cf. Berwanger*, 178 F.3d at 840 (employing a similar approach).

We shall retain jurisdiction to see that our instructions are carried out and to ensure prompt review of the district court's ruling on the defendants' motion. *See Glover*, 138 F.3d at 243 (retaining jurisdiction after vacating the district court's judgment denying the defendants' motion to terminate federal court supervision over aspects of the Michigan women's correctional system); 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3937.1, at 697 (2d ed. 1996) ("Power to deal with the issues presented on appeal inherently includes authority to enforce the court's decision or to regulate the course of further proceedings required to reach an effective decision."). The stay of prospective relief previously issued by a panel of this court shall remain in effect pending the district court's resolution of this matter.

### III.  CONCLUSION

In conclusion, we **REVERSE** the district court's order terminating the *Hadix* consent decree because it fails to comply with the requirements of the PLRA, and we **REMAND** the case to the district court for further proceedings in accordance with our opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0354P (6th Cir.)
File Name:  00a0354p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EVERETT HADIX, et al.,
    *Plaintiffs-Appellees/*
    *Cross-Appellants,*

    *v.*

PERRY M. JOHNSON, et al.,
    *Defendants-Appellants/*
    *Cross-Appellees.*

Nos. 99-1413/1457

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 80-73581—John Feikens, District Judge.

Argued:  August 3, 2000

Decided and Filed:  October 5, 2000

Before:  MOORE and CLAY, Circuit Judges; RICE,[*] Chief
District Judge.

_____

[*] The Honorable Walter Herbert Rice, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

---

**COUNSEL**

---

**ARGUED:**    Leo H. Friedman, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellants.  Michael J. Barnhart, Detroit, Michigan, for Appellees.  **ON BRIEF:** Leo H. Friedman, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellants. Michael J. Barnhart, Detroit, Michigan, Deborah A. LaBelle, LAW OFFICES OF DEBORAH LaBELLE, Ann Arbor, Michigan, Patricia A. Streeter, Detroit, Michigan, for Appellees.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  This case, which has a procedural history spanning twenty years, involves a civil rights action brought by Michigan prisoners alleging unconstitutional conditions of confinement.  The subject of this appeal is an order entered by the district court on March 18, 1999 relating to the defendants' motion to terminate the consent decree that was entered into by the parties in 1985.  Because the district court failed to comply with the mandates of the Prison Litigation Reform Act, we **REVERSE** the district court's order and **REMAND** for further proceedings.

**I.  BACKGROUND**

In 1980, Everett Hadix and ten other prisoners brought a class action suit in the United States District Court for the Eastern District of Michigan on behalf of all prisoners incarcerated at the State Prison of Southern Michigan, Central Complex ("SPSM-CC") against various state prison officials. The suit, which was brought pursuant to 42 U.S.C. § 1983,

regarding current and ongoing constitutional violations, and insofar as it orders the continuation of prospective relief without any finding that the relief is justified pursuant to the criteria set forth in § 3626(b)(3).  We remand the case to the district court with strict instructions for the prompt resolution of the defendants' motion to terminate.

On remand, although the district court may encourage the parties to continue their settlement negotiations, which have been partially successful, the court should not indefinitely delay resolution of the defendants' motion in the hope that the parties will amicably resolve their differences.  Therefore, we instruct the district court to allow the parties thirty days from the date our opinion is filed in which to resolve all issues by way of settlement.  If the parties are unable to reach a complete agreement within thirty days, then the district court should schedule an evidentiary hearing to be held no more than thirty days from that date, *i.e.*, no later than sixty days from the date our opinion issues.

Within sixty days of the commencement of the evidentiary hearing, the district court shall issue an opinion applying the PLRA to the defendants' motion to terminate.  The district court must bear in mind that the relevant inquiry is *not* whether the defendants are in compliance with the consent decree; instead, pursuant to the PLRA, the district court must determine if the consent decree is currently necessary.  To fulfill its statutory duty, the district court must make written findings as to whether "prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." § 3626(b)(3).  If the court finds that the current conditions at SPSM-CC do not violate the Constitution, then it should terminate the consent decree, regardless of whether the objectives of the consent decree have been achieved.  If, on the other hand, the court finds that constitutional violations persist, then it should retain jurisdiction to enforce

144 F.3d at 949, district courts considering motions for termination under the PLRA have allowed plaintiffs opposing termination to present evidence of ongoing violations prior to ruling. *See, e.g., Jensen v. County of Lake*, 958 F. Supp. 397, 406 (N.D. Ind. 1997); *Carty v. Farrelly*, 957 F. Supp. 727, 733 (D.V.I. 1997).

In the instant case, the plaintiffs submitted to the district court on the day of the status conference a response to the June 1998 compliance report regarding Facility B. However, prior to termination, the plaintiffs were not given an opportunity to present evidence of current and ongoing constitutional violations. On remand, the plaintiffs must be given such an opportunity.

## C. Proper Relief

In their brief, the defendants argue that we should immediately terminate the *Hadix* consent decree rather than remanding to the district court for another round of proceedings. While the PLRA mandates swift resolution of motions to terminate consent decrees respecting prison conditions, and while the defendants are correct that there has been considerable delay in the district court, we must decline the defendants' request. Determination of whether prospective relief is justified according to the criteria set forth in § 3626(b)(3) is a precondition to termination of a consent decree under the PLRA. *See Berwanger*, 178 F.3d at 839. Such a determination cannot be made at this point due to the incompleteness of the current record; as we have explained, the plaintiffs must be given an opportunity to prove the existence of current and ongoing constitutional violations. Moreover, these findings should be made in the first instance by the district court, which has twenty-years' experience with this case.

Therefore, we reverse the district court's March 18 order insofar as it terminates portions of the consent decree without giving the plaintiffs an opportunity to present evidence

alleged unconstitutional conditions of confinement. In 1985, the parties entered into a comprehensive consent decree, which was later approved by the district court, addressing various aspects of prison life, including safety, sanitation, hygiene, and protection from harm. The consent decree stated that its provisions were "intended by the parties to assure the constitutionality of the conditions under which prisoners are incarcerated at SPSM-CC," although the decree contained no admission of liability on the part of the state prison officials nor any findings of constitutional violations. Joint Appendix ("J.A.") at 154 (Consent Decree).

The provisions of the consent decree most relevant to this appeal are the plan for out-of-cell activity and the new management plan. Section IV.H.2 of the consent decree provided that "[w]ithin 180 days from the entry of the Judgment in this matter, the Department will submit a plan which will provide for meaningful out-of-cell activity." J.A. at 180C (Consent Decree). Although the consent decree "recognized that no particular activity is itself required," it noted that the "objective of the plan is to provide meaningful activity outside of cells including access to general and law libraries, education, industrial and other work activity, religious activity, other group activities, etc." J.A. at 180C (Consent Decree). Within the specified time period, the defendants submitted an out-of-cell activity plan, which included the implementation of Jackson Community College ("JCC") programming at SPSM-CC, and this plan was accepted by the plaintiffs. The defendants later sought to modify their plan for out-of-cell activity (to cancel JCC programming), but the district court refused and instead granted the plaintiffs an injunction to enforce the plan. The district court explained that although the consent decree provided that no particular out-of-cell activity was required, "the parties intended that the plan become a binding addendum to the judgment." J.A. at 242. Therefore, the district court ruled that the out-of-cell activity plan submitted by the defendants and approved by the plaintiffs became part of the consent decree.

Section VIII of the consent decree required the defendants to proceed with a management and organization study of SPSM-CC.   Once the study was completed, the consent decree required the defendants to draft a management plan for the facility addressing the recommendations from the study. On June 8, 1990, the court adopted a stipulated agreement by the parties.  This agreement acknowledged the importance of decentralization of the SPSM-CC facility, and it provided for the creation of the "SPSM Decentralization Team" ("SDT"), which was to oversee the plans for renovation.  J.A. at 205 (Stipulated Agreement).  The result of this effort was a break-up plan mandating the creation of four new correctional facilities and an administration facility (Facilities A through E) at the SPSM-CC.

In 1992, the district court transferred the medical and mental health care components of the consent decree to Chief Judge Enslen in the United States District Court for the Western District of Michigan.  These components of the consent decree were transferred to Judge Enslen in the interest of uniformity; Judge Enslen was at that time monitoring compliance with a consent decree in another Michigan prisoners' civil rights case involving similar issues.

In April of 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321-66 (1996).  "Enacted in part in response to criticisms that federal courts had overstepped their supervisory authority in prison conditions cases, the PLRA was specifically intended to limit the use of court-enforced consent decrees and to restrict 'the ability of Federal judges to affect the capacity and conditions of prisons and jails beyond what is required by the Constitution and Federal law.'"  *Hadix v. Johnson*, 144 F.3d 925, 931 (6th Cir. 1998) (quotation omitted), *abrogated by Miller v. French*, --- U.S. ---, 120 S. Ct. 2246 (2000).  To that end, the PLRA established stringent standards for the entry and, more relevant for our purposes, the termination of prospective relief in suits challenging the constitutionality of prison conditions:

and because the existing record at the time the motion for termination is filed will often be inadequate for purposes of this determination, the party opposing termination must be given the opportunity to submit additional evidence in an effort to show current and ongoing constitutional violations. This position has been taken by numerous other courts that have considered the issue.  *See Loyd v. Alabama Dep't of Corrections*, 176 F.3d 1336, 1342 (11th Cir.) (reversing the district court's refusal to hold an evidentiary hearing prior to terminating the consent decree, reasoning that "[i]t would read all meaning out of [§ 3626(b)(3)] to force the party opposing termination to show that the consent decree meets the requirements of § 3626(b)(3) and then not provide that party with the opportunity to present evidence on that point"), *cert. denied*, --- U.S. ---, 120 S. Ct. 613 (1999); *Berwanger*, 178 F.3d at 839-40 (holding that the district court erred by letting more than a year pass after the motion for termination was filed without action and then terminating the decree under § 3626(b)(2) without making any findings, and explaining that the district court must hold an evidentiary hearing if there are disputed issues of material fact); *Benjamin*, 172 F.3d at 166 ("In sum, we interpret §§ 3626(b)(2) and (3), read together, to mean that, when the plaintiffs so request in response to a defendant's motion for termination, the district court must allow the plaintiffs an opportunity to show current and ongoing violations of their federal rights."); *Tyler v. Murphy*, 135 F.3d 594, 597 (8th Cir. 1998) (agreeing with the argument that proponents of prospective relief under the PLRA must be given an opportunity on remand to present evidence supporting such relief).  *But see Cagle v. Hutto*, 177 F.3d 253, 258 (4th Cir. 1999) (holding that § 3626(b)(3) does not require a district court to hold an evidentiary hearing in all cases, although noting that a district court may do so in appropriate circumstances and stating that a hearing is mandated if "the party opposing termination alleges specific facts which, if true, would amount to a current and ongoing constitutional violation."), *cert. denied*, --- U.S. ---, 120 S. Ct. 2723 (2000). Furthermore, as we have previously pointed out, *see Hadix*,

in a previous opinion concerning the constitutionality of the PLRA's automatic stay provision. In that decision, we explained:

Michigan . . . contends that under the statute a motion for immediate termination of a consent decree must be considered on the record existing at the time the motion was filed, disallowing the district judge to engage in supplemental fact-finding. The state supports its argument by § 3626(b)(3)'s directive that "[p]rospective relief shall not terminate if the court makes written findings *based on the record*" . . . that relief remains necessary and narrowly drawn. That language, the inmates respond, does not mean simply the existing record at the time the motion was filed. Rather, the statute necessarily enables a district judge to examine current conditions at the prisons which become part of the judicial record, since the very task before the judge is to ascertain the existence of "a current or ongoing violation" of a federal right. As the state would have it, the district court would be forbidden from supplementing the past record in a case to determine whether a current constitutional violation exists. . . .

We believe this debate is premature at this juncture and should await appellate review of the lower courts' actual rulings on the termination motions. The proper evidentiary methods and materials that a district court may utilize in deciding a § 3626(b)(2) motion is a question more aptly considered when this court has before it a concrete example of how a district court actually proceeded in ruling upon a motion under § 3626(b)(2).

*Id.*

Section 3626(b)(3) of the PLRA requires a district court to determine, based on the record, whether there exists a "current and ongoing violation of the Federal right." Because the PLRA directs a district court to look to *current conditions*,

(2) **Immediate termination of prospective relief.** — In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

(3) **Limitation.** — Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b).

After enactment of the PLRA, the defendants moved for the termination of the consent decree pursuant to 18 U.S.C. § 3626(b)(2). The defendants argued that the 1985 order approving the consent decree contained none of the requisite findings set forth in § 3626(b)(2); instead, the district court had simply ruled that the decree was fair and reasonable. The defendants contended, furthermore, that the consent decree was not narrowly drawn to correct constitutional violations. On November 1, 1996, the district court denied the defendants' motion to terminate the consent decree, ruling that the termination provisions of the PLRA quoted above were unconstitutional on separation-of-powers grounds. *See Hadix v. Johnson*, 947 F. Supp. 1100, 1113 (E.D. Mich. 1996). On appeal, a panel of this court reversed the district court's judgment. *See Hadix v. Johnson*, 133 F.3d 940, 941 (6th Cir.), *cert. denied*, 524 U.S. 952 (1998). We reasoned that § 3626(b)(2)-(3) did not impermissibly reopen a final judgment, but instead merely altered the prospective

application of orders requiring injunctive relief. Furthermore, we concluded that the termination provisions did not impermissibly prescribe a rule of decision. Accordingly, we held that the termination provisions were constitutional, and we remanded the case to the district court for consideration of the merits of the defendants' motion for termination.

On March 18, 1999, the district court issued the ruling that forms the basis for this appeal. *See Hadix v. Johnson*, 45 F. Supp. 2d 584 (E.D. Mich. 1999). In ruling on the defendants' motion to terminate the consent decree, the district court focused its attention on determining whether there had been substantial compliance with the consent decree with regard to each of the five facilities designated in the break-up plan. The district court first considered Facility A, which is designed to receive, process, evaluate, classify, and place all incoming prisoners. Facility A will also house and provide services for prisoners who are receiving short-term medical treatment, and it will provide custody, security, and support services for the hospital. *See id.* at 586. The district court noted that major work on Facility A had not yet begun, and it explained that the defendants had proposed a substitute plan to replace the court-approved plan for that facility. *See id.* at 587. With regard to Facility A, the district court reasoned:

> [B]ecause of the special nature of this facility, I find that the evaluation of the adequacy of defendants' alternative proposal is best left to a determination of this matter at an upcoming health care compliance hearing before Judge Enslen. Evaluation of defendants' proposed alternatives is primarily a medical issue, involving assessments of the effect that such proposed changes would have on unclassified prisoners and prisoners with severe or chronic medical conditions who are housed in this facility.
>
> Jurisdiction, therefore, is transferred to Chief Judge Enslen of the Western District of Michigan, subject to his approval.

The fundamental problem with the district court's order is that it focused not on the inquiry required by the PLRA, but rather on the question whether the consent decree had been substantially complied with. *Cf. Glover v. Johnson*, 138 F.3d 229, 242 (6th Cir. 1998) (vacating district court's judgment denying the defendants' motion to terminate federal court supervision in another prisoners' civil rights case where the district court improperly misdirected its attention "to an inquiry into whether the state has complied with the details . . . of the requirements of the remedial plans" rather than focusing on whether there were ongoing constitutional violations). On remand, the district court must direct its attention to § 3626(b)(3) and determine whether prospective relief is warranted under the criteria set forth in that provision.

### 2. Opportunity to Present Evidence of Ongoing Constitutional Violations

The plaintiffs object to the district court's order to the extent that it terminated portions of the consent decree without the court first having conducted an evidentiary hearing on the existence of ongoing constitutional violations.[2] This claim involves an interpretation of the governing statute, a legal question that we review de novo. *See United States v. Brown*, 151 F.3d 476, 482 (6th Cir.), *cert. denied*, 525 U.S. 1026 (1998).

The plaintiffs' argument goes to the question of "[t]he proper evidentiary methods and materials that a district court may utilize in deciding a § 3626(b)(2) motion." *Hadix*, 144 F.3d at 949. We addressed, but did not resolve, this question

---

[2] In its March 18 opinion, the district court mentioned that with regard to Facility B it conducted an "on-site hearing" on December 10, 1998 at which the court monitor's findings were reviewed. *Hadix*, 45 F. Supp. 2d at 587. However, both parties agree that no hearing has ever been held regarding the defendants' June 1996 motion to terminate the consent decree. The December 10 meeting was a status conference at which no testimony was presented, no evidence was taken, and no record was made.

findings, unless the court "makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(2)-(3). The statute defines "relief" to include consent decrees. 18 U.S.C. § 3626(g)(9). Therefore, in ruling on a motion for termination, the district court must determine whether prospective relief is justified according to § 3626(b)(3)'s criteria; if the district court does not make the requisite findings, it must terminate the consent decree. *See Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir.) (en banc) ("Since prospective relief, under the set of definitions provided in the Act, includes a consent decree to the extent that the decree does not award compensatory monetary damages, we think it clear from the statute itself that, if those findings were not made in connection with the entry of the decree, and if the court does not proceed to make the requisite findings that prospective relief remains necessary to correct a current and ongoing violation of a federal right, the Act requires the termination of such a consent decree." (citations omitted)), *cert. denied*, --- U.S. ---, 120 S. Ct. 72 (1999).

In the instant case, the district court's opinion is wholly devoid of any of the findings required by § 3626(b)(3). Although the district court purported to "terminate" the consent decree provisions that it did not transfer to Chief Judge Enslen, the conditions imposed gave the court continuing jurisdiction over the decree essentially until the defendants substantially complied with all of its terms. Ordering the continuation of prospective relief in the absence of the requisite findings is contrary to both the letter and the spirit of the PLRA. Moreover, if such a conditional termination could constitute termination for purposes of the PLRA, then district courts could routinely evade the dictates of that statute. Because the district court in the instant case failed to make the requisite findings, its continuation of prospective relief as a condition of termination was improper.

*Id.*

Facility B was the only facility that was re-occupied and operational at the time of the district court's decision. With regard to Facility B, the district court found that there had been substantial compliance with nearly all of the provisions of the consent decree. *See id.* The district court therefore terminated the consent decree with respect to Facility B, with two exceptions. First, the district court explained that problems still remained concerning water temperature, air temperature, and ventilation. The district court reasoned:

> There is not, however, sufficient evidence whether the continued noncompliance constitutes serious health risks of constitutional dimension to the prisoners housed in Facility B. To determine potential harmful effects on prisoners, or sufficiency of attempts to mitigate these possible harmful effects, evidence must be produced as to the extent of non-compliance (for example, how high are the temperatures in the summer months), the medical condition of any prisoners affected, and the effectiveness of any further efforts to mitigate problems that still exist. Like the issues in Facility A, these issues are essentially medical issues, and can be considered by Judge Enslen at an upcoming health care compliance hearing. Therefore, jurisdiction over these three paragraphs of the consent decree is transferred to Judge Enslen, subject to his approval.

*Id.* at 588. Second, the district court explained that termination of the break-up plan did not affect the out-of-cell activity plan; the district court ruled that the out-of-cell activity plan remained in effect and would be the subject of a further hearing. *See id.*

Finally, the district court explained that Facilities C, D, and E had yet to be completed. *See id.* With regard to these facilities, the court reasoned:

[U]nder 18 U.S.C. § 3626(b)(3), supervision of these facilities will terminate now, subject to the following three conditions:

 (1) Defendants must demonstrate that the renovation projects of Facilities C, D and E have reached a point of inevitability (substantial completion).

 (2) If there is a variance from the approved Break-Up Plan, it must be shown to be de minimis, or that the variance has been approved by the SDT.

 (3) A hearing must be held demonstrating substantial compliance following the same procedure as has been utilized for the termination of the Break-Up Plan as to Facility B.

This approach meets the requirements of the PLRA, in that without the need for a further hearing to determine whether constitutional violations exist, this procedure, already successfully implemented as to Facility B, provides for minimal intrusion by me, the Court Monitor, or plaintiffs. . . .

 I find that these three conditions are the least intrusive, most narrowly drawn conditions on which I can terminate the consent decree. Defendants have been given previous opportunities to terminate the consent decree simply by demonstrating the inevitability of the renovations and assuring me of their substantial compliance, and they need only satisfy the three conditions set out above to terminate the consent decree now.

*Id.* at 588-89.

 The defendants appealed this order, and the plaintiffs cross-appealed. On July 6, 1999, a panel of this court entered an order granting the defendants a stay pending appeal of the prospective relief authorized by the district court's March 18 order.

terminate the portions of the consent decree transferred to his jurisdiction. Because the defendants objected to the transfer primarily on the ground that it would delay a ruling on their motion, the proceedings in Judge Enslen's court have largely answered their objection. At oral argument, the parties recognized this and agreed that they are no longer pursuing a challenge to the district court's transfer order. We will not, therefore, undertake to review the propriety of this order.

## B. District Court's Termination of the Consent Decree

 Neither party is satisfied with the district court's "termination" of the consent decree provisions. The defendants argue that the termination is only illusory, and that the district court erroneously continued the prospective relief without making the requisite findings under the PLRA. The plaintiffs agree that the district court failed to comply with the PLRA, and they argue that the district court improperly terminated provisions of the decree without giving them an evidentiary hearing. Both parties are correct.

### 1. Conditional Termination

 The defendants challenge the district court's failure to make any of the findings required by the PLRA. "In the absence of any finding of a current and ongoing violation of a Federal right," the defendants argue, "there is nothing to warrant continuation of the extraordinary prospective relief embodied in the Consent Decree, Break-Up Plan, or Out-of-Cell Activity Plan." Br. of Defendants-Appellants at 19. This claim involves determining whether the district court correctly applied the governing legal standard, and we review this legal question de novo. *See Hadix*, 133 F.3d at 942 (stating that questions of law are reviewed de novo); *cf. Berwanger v. Cottey*, 178 F.3d 834, 839 (7th Cir. 1999) (holding that the district court erred by failing to comply with the mandates of the PLRA).

 The PLRA mandates the "immediate termination of any prospective relief" that was approved in the absence of

intertwined' with matters over which the appellate court properly and independently has jurisdiction." *Chambers v. Ohio Dep't of Human Services*, 145 F.3d 793, 797 (6th Cir.), *cert. denied*, 525 U.S. 964 (1998); *see also Brennan v. Township of Northville*, 78 F.3d 1152, 1157 (6th Cir. 1996) (reading dictum in the Supreme Court's decision in *Swint v. Chambers County Commission*, 514 U.S. 35 (1995), to permit the exercise of pendent appellate jurisdiction "where the appealable and non-appealable issues are 'inextricably intertwined'"). We have interpreted "inextricably intertwined" to mean "coterminous with, or subsumed in, the claim before the court on interlocutory appeal." *Chambers*, 145 F.3d at 797 (quotation omitted). We believe that the portion of the district court's order deferring a ruling on the defendants' motion is "inextricably intertwined" with the properly reviewable claims. Because each of the rulings involves the question of the proper application of the PLRA, the pendent claim is subsumed in the scope of the interlocutory injunction appeal. Even if the doctrine of pendent appellate jurisdiction were inapplicable, however, our resolution of the properly reviewable claims will necessarily decide how the district court must proceed on remand.

Finally, the district court in the instant case transferred certain provisions of the consent decree to Chief Judge Enslen in the Western District of Michigan. An order granting or denying a transfer under 28 U.S.C. § 1404(a) is interlocutory and not immediately appealable. *See Lemon v. Druffel*, 253 F.2d 680, 683 (6th Cir.), *cert. denied*, 358 U.S. 821 (1958); *Bufalino v. Kennedy*, 273 F.2d 71, 71 (6th Cir. 1959); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3855, at 472 (2d ed. 1986); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.60[1], at 111-196 (3d ed.). Although the transfer order, too, is arguably "inextricably intertwined" with the reviewable claims, we need not decide whether the exercise of pendent appellate jurisdiction over this ruling would be proper. Chief Judge Enslen has already held a hearing and ruled on the defendants' motion to

## II. ANALYSIS

### A. Jurisdiction

Because the district court's March 18 order is not a final order, we must first resolve a question as to our jurisdiction over this appeal. In analyzing the issue of jurisdiction, it is helpful to distinguish four types of rulings made by the district court in its March 18 order: unconditional termination of certain provisions of the consent decree; conditional termination of certain provisions of the consent decree; deferring a ruling on the termination of certain provisions of the consent decree pending further hearings; and transferring certain provisions of the consent decree to Chief Judge Enslen without ruling on the defendants' termination motion.

First, the district court unconditionally terminated the consent decree with respect to the break-up plan at Facility B. *See Hadix*, 45 F. Supp. 2d at 587. 28 U.S.C. § 1292(a)(1) provides that the courts of appeals shall have jurisdiction of appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." The district court's unconditional termination of certain provisions of the consent decree is appealable pursuant to 28 U.S.C. § 1292(a)(1) as an order dissolving an injunction.

Second, the district court conditionally terminated other provisions of the consent decree. The district court explained that, although the defendants had not achieved substantial compliance with the consent decree as regards Facilities C, D, and E, "[n]onetheless, under 18 U.S.C. § 3626(b)(3), supervision of these facilities will terminate now, subject to . . . three conditions." *Hadix*, 45 F. Supp. 2d at 588. Although the district court stated that it was terminating these provisions of the consent decree, in reality the court explicitly refused to so terminate; the conditions imposed required the defendants to continue the prospective relief set forth in the

consent decree until substantial compliance had been achieved. The district court's ruling is tantamount to an order refusing to dissolve an injunction, and we therefore have jurisdiction to review it pursuant to 28 U.S.C. § 1292(a)(1). *See generally* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3924.2, at 200 (2d ed. 1996) ("Refusals of explicit motions to modify or to dissolve injunctions are readily appealed.").

Third, the district court explained that termination of the consent decree with respect to the break-up plan did not affect the out-of-cell activity plan; the district court therefore ruled that the out-of-cell activity plan "remains in effect[] and will be the subject of a further hearing." *Hadix*, 45 F. Supp. 2d at 588. Although the practical effect of this ruling was to continue or refuse to dissolve the injunction, the district court did not explicitly do so. The Supreme Court, in *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981), explained:

> For an interlocutory order to be immediately appealable under § 1292(a)(1), . . . a litigant must show more than that the order has the practical effect of refusing an injunction. Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." Unless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal.

*Id.* at 84 (quotation omitted) (alteration in original).[1] We have previously dismissed, for lack of jurisdiction, appeals from similar district court rulings deferring a decision on the merits of motions to terminate consent decrees. *See United States v. Michigan*, 134 F.3d 745, 749 (6th Cir. 1998) (holding that the district court's order granting the plaintiffs access to certain prison facilities for discovery purposes and failing to address the merits of the defendants' motion to terminate was not appealable pursuant to § 1292(a)(1); "While in a practical sense, any determination that defers a decision on the termination motion at least temporarily denies dissolution of injunctive relief, defendants' argument proves too much, since any interlocutory order, to the extent it diverts the court's attention and consideration from pending matters, necessarily prolongs litigation."); *Hadix v. Johnson*, No. 96-2548, 1998 WL 30820, *3 (6th Cir. Jan. 22, 1998) (unpublished opinion) (dismissing an appeal from a district court ruling that explicitly reserved final determination on the defendants' motion to terminate the consent decree until this court ruled on the constitutionality of the controlling statute, reasoning that "a demonstration of the order's 'practical effect' is not, by itself, sufficient" to support jurisdiction under § 1292(a)(1)).

Although the district court's decision to defer a ruling pending a further hearing is not itself appealable as an order continuing or refusing to dissolve an injunction under § 1292(a)(1), we may nevertheless exercise pendent appellate jurisdiction over this issue. "The doctrine of pendent appellate jurisdiction allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably

---

[1]In *United States v. Bayshore Associates, Inc.*, 934 F.2d 1391 (6th Cir. 1991), we held that "the *Carson* Court's additional requirement of 'a serious, perhaps, irreparable consequence' applies only to those court orders that have the 'practical effect' of modifying, granting, or denying an injunction, not to orders specifically granting or denying injunctions." *Id.* at 1395.