**Everett HADIX, et al., Plaintiffs,**

v.

**Perry JOHNSON, et al., Defendants.**

**Civ. A. No. 80–73581–DT.**

United States District Court,
E.D. Michigan, S.D.

June 22, 1990.

Patricia A. Streeter, Michael J. Barnhart, Detroit, Mich., for plaintiffs.

Thomas C. Nelson, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs are a class of prisoners who entered into a consent judgment with Michigan's Corrections Commission regarding prison conditions. An order approved by all parties provides that defendants are to pay to plaintiffs' attorneys fees and costs semi-annually. *See* 42 U.S.C. § 1988. Plaintiffs' attorneys seek fees and costs for the period June 30, 1989 through December 31, 1989. They are entitled to these fees and costs for reasons and in amounts stated below.

## I.  BACKGROUND

Plaintiffs' attorneys claim fees pursuant to my "Order Regarding Monitoring Fees"

entered in this case on November 19, 1987 ("Order") for efforts expended monitoring defendants' compliance with the consent judgment.

Defendants have paid the amount they consider legitimate monitoring fees, but object to fees they suspect were incurred litigating classification and contempt issues. Defendants say the charges so incurred are objectionable because (1) plaintiffs are not yet prevailing parties (I transferred the classification issue to Judge Enslen;[1] it was litigated before him, and is now on appeal (USCA No. 90–1367)); (2) the charges are for litigation rather than monitoring, and the Order applies only to monitoring activity; (3) plaintiffs' attorneys have duplicated services; and (4) plaintiffs' attorneys' bill is too vague to enable defendants to evaluate which efforts were spent on non-classification and non-contempt issues, which defendants concede are reimbursable.

Plaintiffs' attorneys reply that defendants' objections violate the objection procedure set forth in the November 19, 1987 Order, in that (1) defendants may object only to "documentation," not the underlying charges; (2) defendants' objections were filed after the Order's fifteen-day cutoff; and (3) the objections are too vague, because they do not identify specific hours.

Plaintiffs' attorneys say that with respect to their *amicus* work on classification and contempt issues in *United States v. Michigan*, ("*USA*"), the defendants misunderstand the concept of "prevailing party." Plaintiffs' attorneys say that the "prevailing party" inquiry is inapposite, and a pending appeal is irrelevant, since *Hadix* plaintiffs never "prevail" in *USA* by their very nature as *amici*. Rather, the question is whether the plaintiffs' attorneys' work is "reasonably necessary" to enforce the consent judgment, citing *Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Plaintiffs' attorneys contend that the work was

necessary in *USA* to safeguard gains in this case ("*Hadix*").

Plaintiffs' attorneys note that classification and contempt are proper subjects of fee recovery under the Order: First, although the *USA* classification issues are on appeal from Judge Enslen's non-compliance order, attorney fees are available because classification is central to other *Hadix* issues. Second, the contempt issue is also relevant to *Hadix*, in that it alleges that defendants were "laundering" information in their required reports.

Alternatively, plaintiffs' attorneys contend that they prevailed when the consent judgment was entered, having obtained "significant relief" under *Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). These cases hold that when assessing fees, the court should not look to assess fees on a claim-by-claim basis, but rather to the significance of the overall relief obtained.

Plaintiffs' attorneys say that defendants are too late in challenging prevailing party status in the monitoring phase, since the parties settled fees leading up to the consent judgment, after the magistrate found plaintiffs to be prevailing parties as to the underlying issues, a finding which defendants never challenged, and since this case is now in the monitoring phase.

I held a hearing in this matter on June 7, 1990. The Order plainly states, "There will be no reduction of hours expended as *amicus* in *USA v. Michigan*." At the hearing, defendants admitted that the intent of the Order's *amici* provision was to allow plaintiffs' attorneys to act as monitors in the *USA* case, and conceded that the recoverable amount is limited to those monitoring activities that were reasonably necessary. However, defendants contended that plaintiffs' attorneys were acting as litigators rather than monitors with regard to classification and contempt issues. Thus, defen-

---

1. Judge Enslen of the Western District of Michigan is hearing a related case, *United States v. Michigan*, No. G 84–63–CA, which deals with prison conditions in other parts of the same prison.

dants argue, the Order would permit a reduction for *amici* hours that were not monitoring hours. Defendants conceded that if plaintiffs' attorneys were acting as monitors, their fees and costs would be reimbursable, although defendants preserved objections to the documentation.

Hence, the principal question for me to decide is whether plaintiffs' attorneys acted as litigators or monitors. Defendants conceded that the outcome turns on this single point. The rest is a question of accounting.

## II. ANALYSIS

First, I dispose of the procedural objections. Plaintiffs' attorneys are correct that defendants' objections are untimely under the Order. But the Order's language that defendants may object to "documentation" does not prevent defendants from objecting to the underlying charges. Although defendants' procedural objections may be valid in part, I nevertheless exercise my discretion and consider defendants' arguments.[2]

I hold that plaintiffs' attorneys engaged in monitoring of both classification and contempt issues.

■ Some time ago, for consistency reasons, all parties to this litigation agreed to submit classification issues to Judge Enslen, because they impact the entire prison population, including the *Hadix* plaintiffs. That I never transferred these issues by formal order is irrelevant. The transfer, in fact, was accomplished. The parties have conducted the case on that basis. A consent judgment entered in *USA* states that the Corrections Commission will implement a "professionally-based classification plan." Plaintiffs' attorneys have been involved as *amici* in presenting briefs and witnesses to Judge Enslen on the meaning of that phrase. The obligation has been determined; there is no longer a need to litigate. Plaintiffs' attorneys are involved to convey their clients' views of how that phrase should be interpreted. That is monitoring.

The issue before Judge Enslen regarding contempt is whether the Corrections Commission was secretly altering its records. Corrections Commission records are critical to monitoring in the *Hadix* case, and it was within plaintiffs' attorneys' monitoring function to participate in resolving this issue.

Since I decide that these are monitoring hours, there is no need to address defendants' vagueness objection.

■ The remaining relevant issue is whether plaintiffs' attorneys are legitimately entitled to fees. *Northcross* holds that the "prevailing party" issue is a predicate to applying 42 U.S.C. § 1988. After a party is deemed to have prevailed, it is entitled under the statute to "all time reasonably spent on the matter." *Northcross, id.* at 636. Hence, monitoring activity is justified if "reasonable," *id.* at 637; *i.e.,* reasonably necessary to ensure that the plan is working.

This leads to the defendants' point that it is impossible to say whether plaintiffs' attorneys' efforts were reasonably necessary to ensure that the consent judgment is working until the United States Court of Appeals for the Sixth Circuit has ruled on Judge Enslen's non-compliance order. Defendants' position assumes that the *USA* plaintiffs' success on the merits determines whether the *amici* efforts were reasonably necessary. That is not the test.

While *Northcross* did not elaborate upon the meaning of "reasonable," I hold that what is reasonably necessary will be determined by examining whether the efforts expended appear reasonably related to monitoring, and whether the hours and costs expended for the efforts claimed appear to be in reasonable amount.

Based upon the affidavits of plaintiffs' attorneys, I find all the efforts reasonably related to monitoring, because they unquestionably relate to hours I have deemed to be appropriate subjects of monitoring; namely, classification and contempt. The hours spent by Attorney Michael Barnhart on the *Cain* case are related to monitoring. The hours spent communicating with Eliza-

---

**2.** In so deciding, I do not mean to vitiate the Order's requirement that all objections be filed within fifteen days. I expect literal compliance in the future.

beth Alexander, who represents other *amici* in *USA*, are related to monitoring. Defendants have not shown otherwise. Moreover, the descriptions of these hours are clear.

I also find that the hours and costs are in reasonable amount. The Order provides that work and travel time will each be billed at $110 per hour for Barnhart and $95 per hour for Attorney Patricia Streeter, and that "[t]here will be no reduction for duplication of attorney time, provided that counsel continue to divide responsibilities."

At the hearing, defendants did not develop their objections to plaintiffs' attorneys' fee statement. Thus, I must rely upon Attachment 2 to Plaintiffs' Motion for Attorney Fees and Costs. Attachment 2 is a letter from defendants' counsel to plaintiffs' attorneys that details objections to their statement,[3] which is itself attached to the letter.

The letter states that defendants' counsel have directed defendants to pay Barnhart $34,293.50 of the $48,686.00 he requested in fees, and $29.85 of the $589.56 he requested in non-telephone costs.[4] This leaves an unpaid difference of $14,392.50 in fees; $559.71 in non-telephone costs; totaling $14,952.21.

Defendants' counsel has directed defendants to pay Streeter $38,627.00 of the $53,556.25 she requested in fees, and none of the $3,508.73 she requested in non-telephone costs. This leaves an unpaid difference of $14,929.25 in fees; $3,508.73 in non-telephone costs; totaling $18,437.98. The governing perspective is this: I find that plaintiffs' attorneys are entitled to all amounts billed, except telephone charges. Thus, plaintiffs' attorneys receive the difference between what they billed and what defendants said would be paid. Given the ambiguous accounting of contested hours, the approach attempted at the hearing, *i.e.*, figuring out which hours are in contest, resolving those, and multiplying by the hourly rate, yields confusion and error.[5]

---

3. This bill is identical to plaintiffs' attorneys' affidavits.

4. At the hearing, the parties agreed to resolve issues of telephone costs separately from those disposed of here.

5. Defendants' accounting of their objections is difficult to reconcile with their letter objecting to fees and costs. Defendants marked the bill with handwritten asterisks next to the items to which they object. Sub-total figures are handwritten on the bottom margin of each page. Since the sum of asterisked items on a given page does not always match the sub-total marked in the margin, it appears that defendants object to only some portion of some asterisked line-items. This seems to have something to do with the fact that some of the asterisked items contain multiple sub-parts. It is unclear to which sub-parts defendants object. For purposes of illustration, I presume the marginal sub-totals accurately reflect the objections, though as will be shown, the choice does not matter.

Adding the marginal sub-totals, defendants object to the hours as follows:

| Michael Barnhart: | |
|---|---|
| Classification | 138.70 hrs. |
| Contempt | +23.30 hrs. |
| TOTAL | 162.00 hrs. |
| Patricia Streeter: | |
| Classification | 142.50 hrs. |
| Contempt: | +14.65 hrs. |
| TOTAL | 157.15 hrs. |

For Streeter, multiplying these hours by the hourly rate leads to the same result as the difference obtained by subtracting the uncontested amount from the billed amount. But for Barnhart, the contested hours exceed the difference. I choose to award the difference between the uncontested amount and the billed amount rather than multiplying contested hours by hourly rate, because to choose the latter would result in a windfall for Barnhart.

The costs claimed are also governed by 42 U.S.C. § 1988. *See Northcross, id.* at 639. The unpaid difference in non-telephone costs for Barnhart is $559.71. The asterisked cost items total $471.52. The unpaid difference in non-telephone costs for Streeter is $3,508.73. The asterisked cost items total $389.13. The letter suggests that these discrepancies exist because defendants object to *all* costs, though they have only marked *some* with asterisks, for a reason known only to them. They object to all costs because they cannot tell whether costs have been duplicated. I agree that the bill does not precisely say what documents were copied or transmitted by facsimile or why, and that these costs are fairly substantial. However, all the other costs are quite clearly delineated. Given the size and complex nature of this case, I am reluctant to second-guess plaintiffs' attorneys, and am satisfied that a higher level of detail (and administrative bureaucracy) than that provided is not necessary. I find the costs to have been reasonably necessary for monitoring and in reasonable amount.

Only defendants' objection that the attorneys' duplicated effort bears on the reasonableness of these amounts. Defendants have not supported their duplication argument with specific examples, but hinted, I believe, that the bill was too vague to determine whether duplication existed. By doing so, defendants suggest simply that there must be duplication somewhere. I find that argument untenable as to duplication; it is really a vagueness argument. Upon review of the bill, I find the descriptions sufficiently detailed to permit review for duplication. I find that the bill is not vague and that the efforts were not duplicated.[6]

I find that the amounts are reasonable, guided by the considerations set forth in *Northcross* at 642–43.

Hence, plaintiffs' attorneys are entitled to the full amounts of their bills, less telephone costs. For Barnhart, this means $49,569.76, less $294.20, which leaves $49,275.56. For Streeter, this means $58,042.01, less $977.03, which leaves $57,064.98.

Since I have found no reason to reduce the amounts sought, I GRANT plaintiffs' motion and ORDER defendants to pay to Michael Barnhart forthwith the lump sum of $49,275.56, and to pay to Patricia Streeter forthwith the lump sum of $57,064.98. Defendants may deduct any amounts already paid for these services.

---

If defendants wish to propose a more detailed accounting method for the future, they may do so. Since defendants periodically bring in new counsel, perhaps a uniform agreement on this matter would be desirable to avoid prospective disputes.

**6.** The only colorable area where duplication might be asserted would be in preparation for and attendance at the classification meeting on August 17, 1989, and hearings on September 27–28, 1989, and November 2–3, 1989. However, given the complex and unwieldy case, any duplication of effort is surely minimal.