**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0168n.06

Nos. 09-1424, 09-2255

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 22, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| EVERETT HADIX et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| PATRICIA L. CARUSO et al., | ) | |
| | ) | |
| **Defendants-Appellees.** | ) | **O P I N I O N** |
| | ) | |
| | ) | |

Before:  MOORE, SUTTON, and FRIEDMAN,[*] Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  This case, which has a procedural history

spanning more than thirty years, involves a civil-rights action brought by Michigan prisoners alleging

unconstitutional conditions of confinement.  The subjects of this consolidated appeal are two orders

entered by the district court on March 31, 2009, and September 10, 2009, which relate respectively

to the injunctive relief ordered in November 2006 and the plaintiffs' motion to add four new class

representatives.  With respect to the March 31, 2009 order, we **AFFIRM** the district court's

termination of the relief granted in November 2006.  We hold that we lack jurisdiction to consider

the September 10, 2009 order, however, because the district court denied without prejudice the

_____

[*]The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit,
sitting by designation.

motion to add new named plaintiffs, and the district court has not yet considered the merits of the motion in the first instance.

## I.  BACKGROUND

In 1980, Everett Hadix and ten other prisoners brought a class action in the United States District Court for the Eastern District of Michigan on behalf of all prisoners incarcerated at the State Prison of Southern Michigan, Central Complex ("SPSM-CC") against various state prison officials. Brought pursuant to 42 U.S.C. § 1983, the complaint alleged unconstitutional conditions of confinement.  In 1985, the parties entered into a comprehensive Consent Decree, which was later approved by the district court, addressing various aspects of prison life, including safety, sanitation, hygiene, and protection from harm.  The Consent Decree stated that its provisions were "intended by the parties to assure the constitutionality of the conditions under which prisoners are incarcerated at SPSM-CC," although the decree contained neither an admission of liability on the part of the state prison officials nor any findings of constitutional violations. Joint Appendix ("J.A.") in No. 09-1424 at 392 (Consent Decree).

Section II.B. of the Consent Decree addresses mental-health issues inside the SPSM.  The mandates of these provisions were officially terminated on January 8, 2001, but, in response to the tragic death of an inmate suffering from mental-health problems in 2006, the district court reopened several aspects of the mental-health-care provisions of the Consent Decree in November 2006. Specifically, the district court reopened section II.B., "limited to the provisions of [the November

2006] Order and Preliminary Injunction." R. 2187 (November 13, 2006 D. Ct. Order at 1). The

district court ordered that the defendants comply with the following:

- "immediately cease and desist from the practice of using any form of punitive mechanical restraints within *Hadix* facilities, and [] timely develop practices, protocols and policies to enforce this limitation";

- "immediately work to develop a staffing plan for adequate psychiatric and psychological staffing at *Hadix* facilities to ensure that routine and emergent psychiatric and psychological services are provided in a timely way";

- "immediately work to provide daily psychologist or psychiatrist rounds in the segregation unit at the *Hadix* facilities"; and

- "immediately work to develop protocols for the coordination of mental health and medical staff, and [] require weekly conferences of the two disciplines which shall include . . . the treatment of prisoners in the segregation unit, and which shall include necessary training to prevent staff and administrative indifference to the provision of care . . . ."

*Id.* at 1–3 (emphasis removed). The district court also permitted the plaintiffs to undertake

"discovery as to mental health care in advance of a final injunctive hearing." *Id.*

In ordering this preliminary injunctive relief, the district court was mindful of the

requirements of the Prison Litigation Reform Act ("PLRA"), which permits injunctive relief relating

to prison conditions only if the district court finds that such relief is necessary to correct a violation

of a federal right:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give

substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). In the November 2006 order, the district court found that the use of mechanical restraints, the inadequate mental-health-professional staffing levels, the lack of daily rounds by a psychologist, and the absence of a protocol for coordination of the medical and mental-health staff constituted deliberate indifference, in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause.

After the November 2006 injunction was entered, this court heard several appeals in this case relating to the injunctive relief and other matters. *See Hadix v. Caruso*, 297 F. App'x 504, 2008 WL 4659809 (6th Cir. 2008) (unpublished opinion); *Hadix v. Caruso*, 248 F. App'x 678, 2007 WL 2753026 (6th Cir. 2007) (unpublished opinion). The parties also filed two motions in the district court in anticipation of a hearing on permanent injunctive relief. The defendants filed a motion to terminate the injunctive relief granted in November 2006, R. 2684, and the plaintiffs filed a motion for further injunctive relief, R. 2757. Ultimately, the district court ruled in favor of the defendants on both motions, R.2903 (March 31, 2009 D. Ct. Op.), prompting the plaintiffs' appeal in No. 09-1424. Thereafter, the plaintiffs filed a motion to add four new class representatives because the previous—and sole remaining—named plaintiff was no longer a member of the *Hadix* class due to the fact that the facility at which he resided was determined to be no longer a *Hadix* facility. R.2915. The district court denied this motion without prejudice in an unnumbered docket entry on September 4, 2009, "pending outcome of the current appeal." In response to the plaintiffs' motion for reconsideration of this order, R.2947, the district court stated that the motion for reconsideration was

denied without prejudice because "it is prudent to await the decision of the Court of Appeals, so that all parties will have the benefit of that ruling before addressing the issues raised by Plaintiff's motion . . .," R. 2949 at 1. The plaintiffs' appeal from this denial of reconsideration constitutes the second part of this appeal, No. 09-2255.

## II. The Termination Of Relief Relating To The Mental-Health-Care Provisions

The plaintiffs-appellants' appeal of the district court's March 31, 2009 opinion and order addresses both the district court's decision to terminate the limited, preliminary injunctive relief it granted in November 2006, and the district court's decision not to grant any new, additional injunctive relief. We have jurisdiction to consider this appeal pursuant to 28 U.S.C. § 1292(a). In addition, we review "decision[s] to grant or deny a preliminary or permanent injunction" for abuse of discretion. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). "In determining whether the district court abused its discretion, we review the district court's findings of fact for clear error and its legal conclusions *de novo*." *Hadix v. Johnson*, 182 F.3d 400, 404 (6th Cir. 1999) (quoting *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). We will overrule "the district court's weighing and balancing of the equities . . . only in the rarest of cases." *Id.* (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir. 1997)).

In addition to requiring the existence of a violation of a federal right before a district court may grant injunctive relief in a conditions-of-confinement case, the PLRA contains several other provisions providing for immediate termination of injunctive relief improperly granted and

addressing the ability of the plaintiffs to keep in effect relief previously granted. These provisions

remain focused on the existence of a violation of a federal right:

> (2) Immediate termination of prospective relief.—In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

> (3) Limitation.—Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(2)–(3). Under this standard, the defendants could obtain termination of the

relief granted in the 2006 injunction if they convinced the district court that there was no longer a

"current and ongoing" constitutional violation. On the other hand, the plaintiffs could prevent the

termination of the 2006 injunctive relief if the district court found that there was still a "current and

ongoing" constitutional violation, and that "the prospective relief is narrowly drawn and the least

intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3).

The district court heard testimony from both sides over seven days of hearings in April, May,

June, and August of 2008, after which it issued a decision holding that there were no longer any

constitutional violations in relation to the provision of mental-health care, that the plaintiffs had not

shown any violations of the Consent Decree when seeking new injunctive relief, and that the state

had complied with the requirements of the 2006 injunction. R.2903 (March 31, 2009 D. Ct. Op.).

The district court therefore terminated all relief relating to mental-health care, resulting in the complete termination of section II.B. of the Consent Decree.[1]

With respect to the termination of relief already in effect from November 2006, the plaintiffs assert that the district court erred by applying the wrong standard for an Eighth Amendment deliberate-indifference violation and by failing to make certain necessary findings of fact under Federal Rule of Civil Procedure 52(a). The plaintiffs also argue that the district court erred in not modifying the Consent Decree, and in making clearly erroneous findings regarding the defendants' efforts to comply with the 2006 injunction. With respect to the district court's refusal to grant *additional* prospective relief, apart from that granted in November 2006, the plaintiffs assert that the district court again applied the wrong standard for deliberate indifference and failed to modify the Consent Decree or otherwise to find a breach of the Consent Decree by the defendants. For the reasons that follow, we affirm the judgment of the district court.

**A. The District Court's Conclusion That There Is No Eighth Amendment Violation**

A claim of deliberate indifference under the Eighth Amendment contains two components, one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires that the plaintiff show a deprivation that is "sufficiently serious," one that "pos[es] a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component requires that the plaintiff show that the prison

---

[1]We note, however, that several portions of the Consent Decree—apart from the mental-health provisions of section II.B.—remain open. Therefore, the termination of the mental-health provisions will not, in and of itself, end the entire case.

officials had a "sufficiently culpable state of mind," specifically that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 834, 837.

The plaintiffs claim that *Farmer* indicates that proof of the subjective component is not necessary when a party is seeking only injunctive relief, and that a previous opinion of this court in this litigation removes that requirement completely. Plaintiffs Br. in No. 09-1424 at 34–36 (citing *Hadix v. Johnson*, 367 F.3d 513, 526 (6th Cir. 2004)). We need not reach this issue, however, because, for the reasons that follow, even if the plaintiffs are correct that proof of only the objective component was necessary, we would affirm on the basis of the district court's conclusion that there is no longer a "current and ongoing" constitutional violation.

First, it is important to put the injunctive relief at issue here in context. The November 2006 reopening of the Consent Decree was a "limited" one from the beginning, R. 2187 (November 13, 2006 D. Ct. Order at 1), requiring only "specific, measurable steps carefully tied to the original Consent Decree," R.2903 (March 31, 2009 D. Ct. Op. at 6). Furthermore, as part of the November 2006 order, the district court also permitted the plaintiffs to undertake discovery "as to mental health care," saving for a later date the question of whether permanent injunctive relief would be granted, R.2187 (November 13, 2006 D. Ct. Order at 1–2). "[T]hus," the November 2006 order "limit[ed] the potential duration as well as the scope of the re-opening." R.2903 (March 31, 2009 D. Ct. Op. at 6). As mentioned above, the district court ultimately held seven days of hearings through the

spring and summer of 2008 on whether to grant permanent relief related to the mental-health provisions of the Consent Decree.

In its March 31, 2009 opinion on the plaintiffs' motion for additional relief and the defendants' motion to terminate the November 2006 injunctive relief, the district court engaged in an extensive discussion of the testimony it heard in the seven days of hearings. In doing so, it made findings of fact and conclusions of law regarding the issue of compliance with the terms of the preliminary injunction. Looking to the four specific issues identified in November 2006—the use of mechanical restraints, mental-health-care staffing, daily rounds, and coordination of medical and mental-health staff—the district court concluded that the defendants had complied with each of the four parts of the November 2006 order granting a limited re-opening of the Consent Decree.

Had the district court concluded its analysis there, we would be forced to find error. As we have noted earlier in the course of this litigation:

> the relevant inquiry is *not* whether the defendants are in compliance with the consent decree; instead, pursuant to the PLRA, the district court must determine if the consent decree is currently necessary. To fulfill its statutory duty, the district court must make written findings as to whether "prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." § 3626(b)(3). If the court finds that the current conditions at SPSM-CC do not violate the Constitution, then it should terminate the consent decree, regardless of whether the objectives of the consent decree have been achieved. If, on the other hand, the court finds that constitutional violations persist, then it should retain jurisdiction to enforce compliance with the consent decree, provided that the prospective relief set forth in the decree is necessary, narrowly drawn, and the least intrusive means to correct the violations.

*Hadix v. Johnson*, 228 F.3d 662, 673 (6th Cir. 2000) (emphasis in original). The district court did not end its consideration of the necessity of injunctive relief with these findings of fact, however. Instead, the district court proceeded to consider the issue left open in the November 2006 order: whether, with the benefit of having conducted a full evidentiary hearing, a "[g]eneral [r]e-opening" of the mental-health-care provisions was appropriate. R.2903 (March 31, 2009 D. Ct. Op. at 13). In this regard, the district court's findings that the defendants had complied with the terms of the November 2006 preliminary injunction were relevant to its consideration of whether a current or ongoing constitutional violation warranted further injunctive relief.

The district court ultimately concluded that "Plaintiffs have failed to establish by a preponderance of the evidence that Defendants are violating the Consent Decree provisions governing mental health care, or that any asserted violations of the Consent Decree are of constitutional proportions." R.2903 (March 31, 2009 D. Ct. Op. at 14). In reaching this conclusion, the district court found credible the report and testimony of one of the defendants' experts in psychiatry, Dr. Jeffrey L. Metzner. *Id.* at 16–17. Dr. Metzner "reviewed a wide range of documents material to the Court's November 2006 and May 2007 orders; visited Hadix facilities; met with key mental health, medical and administrative staff; observed mental health rounds; [and] attended a case management meeting." *Id.* at 16. Noting several ways in which "Dr. Metzner's report describes substantial improvements in Defendants' provision of mental health care," the district court agreed with Dr. Metzner's conclusion that the defendants' plan to respond to the district court's orders "satisfactorily addresses the Court's stated concerns." *Id.* at 17.

10

The district court also relied upon the testimony of two other defense witnesses. First, it found credible the testimony of Jared Baker, "a limited license psychologist who conducted rounds in the [segregation unit] over a period of several months." R.2903 (March 31, 2009 D. Ct. Op. at 18). In the district court's view, "Mr. Baker's on-the-ground experience and practical perspective offer especially valuable insight into the provision of mental health care in the [segregation unit]. Mr. Baker described receiving meaningful supervision throughout his rounding experience." *Id.* He also "described prompt and confidential evaluations of inmates newly-assigned to the [segregation unit]." *Id.* at 19.

Second, the district court found credible the testimony of Craig Crawford, the Unit Chief for the Outpatient Mental Health Team. "His responses [to questions about particular inmates] reflected a degree of knowledge and concern that went well beyond mere trial preparation." *Id.* The district court described him as "deeply committed to his patients." *Id.* "Regardless of whether Mr. Crawford, or any other mental health professional always made exactly the best possible call, Mr. Crawford's testimony showed the very opposite of deliberate indifference." *Id.* at 20.

The plaintiffs argue that the intake-screening process at the *Hadix* facilities, which is designed to identify prisoners with mental-health needs as they enter the prison, is grossly inadequate, such that it constitutes deliberate indifference to the prisoners' mental-health needs. The plaintiffs point to two relevant factors in the intake-screening process that, in their view, have an impact on the prospects of a prisoner with mental-health-care needs: (1) "the identity of the

11

psychiatrist who is randomly assigned to evaluate the prisoner," and (2) "whether the prisoner arrives with an existing prescription for psychotropic medications." Plaintiffs Br. in No. 09-1424 at 40.

With respect to the importance of the identity of the psychiatrist, the plaintiffs presented evidence that "discrepancies in the performance of [the prison's] psychiatrists" undermine the effectiveness of the defendants' "bridge order," which ensures that prisoners coming into a *Hadix* facility while taking mental-health medication receive an examination by a mental-health practitioner upon entrance to the SPSM. *Id.* at 9–14. To support the conclusion that these discrepancies pose a substantial risk of harm, the plaintiffs point to the testimony of their expert in psychiatry, Dr. Terry Kupers, and their expert in psychology, Dr. Robert R. Walsh. *Id.* at 41 (citing R.2787 (Testimony of Dr. Terry Kupers at 291–92) and R.2815 (Testimony of Dr. Robert R. Walsh at 675–76)). The district court, however, found neither expert's testimony helpful. In particular, the district court believed that Dr. Kupers's testimony is "ultimately largely beside the point." R.2903 (March 31, 2009 D. Ct. Op. at 21). In the district court's view:

> Dr. Kupers identified many things the Defendants could do better. Indeed, Dr. Kupers often appeared to be an advocate for "best practices" care, which is laudable and sensible, but quite different than showing deliberate indifference. Indeed, when pressed by the Court on this point, the most Dr. Kupers could ultimately conclude was that there exists some unquantifiable risk of future harm if Defendants fail to adopt his recommendations. But this falls far short of the deliberate indifference standard. The Court heard in Dr. Kupers's testimony further evidence of the complexity of caring for the mentally ill in prison, but not evidence of deliberate indifference. The Court also notes that Dr. Kupers, in contrast to Defendants' expert, had no real experience in actually making operational decisions within a prison setting.

*Id.* As for Dr. Walsh, the district court found him similarly unpersuasive:

12

> Dr. Walsh's testimony, though sincere and helpful, is not especially germane to the present situation. His testimony tended to focus on the practices and protocols that existed under his leadership [when he was the administrator of psychological services for the Jackson Clinical Complex] and subsequent changes in those practices and protocols. His testimony offered much more insight into the past than into the current situation. Moreover, like Dr. Kupers, his testimony focused more on Defendants' alleged failure to adopt "best practices," not on alleged systematic, deliberate indifference. The Court could not base any finding of deliberate indifference on the testimony of Dr. Walsh.

*Id.* at 22. In addition, the district court was not persuaded that the evidence of discrepancies in the intake-screening process establishes a constitutional violation; the district court believed that "[a]t most, this evidence identifies possible limited cases of questionable diagnosis or treatment. But that does not amount to deliberate indifference under the Eighth Amendment. The Bridge Order ensures that psychotropic medication will continue at least until a mental health professional has an opportunity to make a professional judgment of the prisoner patient's needs." *Id.* at 18.

We see no clear error in these factual findings; we are not left with the "definite and firm conviction that a mistake has been committed." *Indmar Prods. Co. v. Comm'r*, 444 F.3d 771, 777–78 (6th Cir. 2006). Indeed, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings[.]" *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

The district court considered and rejected the plaintiffs' argument that the "risks presented by sudden discontinuations of psychotropic medication for prisoners coming into a *Hadix* facility" provided a basis for a finding of deliberate indifference. R.2903 (March 31, 2009 D. Ct. Op. at 17). In particular, the district court found that the defendants' implementation of the bridge order

13

"promises a meaningful reduction in abrupt, potentially dangerous interruptions in psychiatric medications." *Id.* at 17. In support of this finding, the district court noted the testimony of Diana Childers, who "indicated that a policy akin to the Bridge Order would have been helpful under the circumstances her son experienced." *Id.* "All parties appear to agree that the Bridge Order is a significant step forward in improving mental health care in *Hadix* facilities." *Id.* We see no clear error in these findings.

Given all of these factual findings by the district court, we do not believe that there was an objective risk of serious harm in violation of the Eighth Amendment with respect to the intake-screening process at the *Hadix* facilities. We therefore reject the plaintiffs' argument to the contrary.

The plaintiffs further argue that an objectively intolerable risk of serious harm exists due to delays experienced by prisoners in need of mental-health treatment. To this end, they point to the delay in providing one delusional patient (who was refusing a CT scan for a suspicious mass in his pelvis) access to a psychologist and a psychiatrist. It took five days for this patient to be seen by a psychologist and sixteen days to be seen by a psychiatrist. The plaintiffs also point to the minutes of a staff meeting in 2008 which noted that staff members acknowledged that there existed "fail[ures] to identify mental illness and suicidality. Numerous instances of a failure to see patients timely. Very long waiting list." Plaintiffs Br. in No. 09-1424 at 16 (quoting J.A. in No. 09-1424 at 1086–87). Furthermore, the plaintiffs point to testimony from Dr. Kupers that he found "[m]any examples" of unsupervised limited-license staff members serving as "gatekeepers" to psychiatrists. R.2787 (Testimony of Dr. Terry Kupers at 307). Dr. Kupers also stated his belief that limited-license

staff members had inadequate supervision. *Id.* at 308. Lastly, the plaintiffs point out that when Dr. Kupers was asked if he thought that "the level of delay in access to mental health services is exposing prisoners to a substantial danger of serious harm," Dr. Kupers responded, "Absolutely it is." *Id.* at 296.

We do not believe that this evidence requires reversal of the district court's determination that there was no longer a current and ongoing constitutional violation. With respect to Dr. Kupers, as mentioned above, the district court did not find his testimony to be persuasive in establishing deliberate indifference. The district court noted, for example, that Dr. Kupers's beliefs as to what constituted "best practices" do not necessarily establish deliberate indifference. Rather, "[t]he Court heard in Dr. Kupers's testimony further evidence of the complexity of caring for the mentally ill in prison." R.2903 (March 31, 2009 D. Ct. Op. at 21). Additionally, the five- and sixteen-day time span before services were provided to the patient who was refusing a CT scan and the staff-meeting minutes from 2008 are insufficient, in our view, to warrant a judgment that the defendants have been deliberately indifferent to prisoners' serious medical needs, especially in light of the district court's finding that great improvements have been made with respect to mental-health-care staffing, the provision of daily rounds, and the coordination of mental-health and medical staff, *id.* at 10–13, along with the district court's confidence in the testimony of Metzner, Baker, and Crawford, *id.* at 18–21.

We therefore see no basis on which to reverse the district court's determination that there was no longer a current and ongoing violation of the Eighth Amendment in the provision of mental-

health services at the *Hadix* facilities.  We cannot say that the district court's conclusions regarding an objectively "substantial risk of serious harm," *Farmer*, 511 U.S. at 834, were in error.[2]

## B.  The Plaintiffs' Remaining Arguments

Given our agreement with the district court's determination that there is no longer any constitutional violation with respect to the provision of mental-health care in the *Hadix* facilities, our consideration of the plaintiffs' remaining arguments becomes simpler.  First, the plaintiffs argue that the district court erred in failing to make certain findings of fact under Federal Rule of Civil Procedure 52(a).  We see no merit in this argument.  The district court made numerous findings of fact throughout its opinion, as discussed above, and these, we have determined, provided a sufficient basis for the district court's legal conclusion—which we affirm today—that there was no longer an ongoing violation of the Eighth Amendment with respect to the provision of mental-health services in the *Hadix* facilities at the time of the district court's judgment.

Second, in light of our determination that the district court did not err in concluding that there was no longer an ongoing violation of the Eighth Amendment, we need not address the plaintiffs' argument that the district court erred in failing to modify or find a breach of the Consent Decree.

---

[2]We also do not adopt the plaintiffs' argument that an Eighth Amendment violation has occurred due to "Defendants' practice of allowing limited-license psychologists to stop referrals to psychiatrists."  Plaintiffs Br. in No. 09-1424 at 44.  Although the plaintiffs have pointed to the testimony of Dr. Kupers that, in his view, limited-license psychologists and other mental-health staff members require much closer supervision than they currently receive, *id.* at 17, 19 (citing J.A. in No. 09-1424 at 903, 904, 907, 908, 914), we are not convinced that this constitutes an objectively intolerable risk of harm in the circumstances of this case.  Dr. Kupers's testimony relates to "best practices" care, which, as the district court found, does not establish deliberate indifference in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause.

The PLRA precludes the grant or continuation of injunctive relief in the absence of a finding of a constitutional violation. Finally, because the district court determined that there is no "current and ongoing" constitutional violation, we need not address the plaintiffs' argument that the district court made clearly erroneous findings of fact regarding the defendants' efforts to comply with the 2006 injunction.

## C. Conclusion

For these reasons, we conclude that the district court did not err in determining that there was no longer a "current and ongoing" violation of the Eighth Amendment. We therefore affirm the district court's termination of all injunctive relief related to the mental-health provisions of the Consent Decree.

### III. The Denial Of The Motion To Add New Named Plaintiffs

The appeal in No. 09-2255 relates to the district court's denial of the plaintiffs' motion to add four new class representatives, invoking Federal Rule of Civil Procedure 24, governing intervention. The need to add these new named plaintiffs arose from the fact that the district court determined in its March 31, 2009 order that the facility in which the sole remaining named plaintiff resided, the Ryan Correctional Facility, no longer constituted a *Hadix* facility, leaving no named *Hadix* class members. The district court denied without prejudice the motion to add new named plaintiffs in an unnumbered docket entry on September 4, 2009, "pending outcome of the current appeal." The district court also denied the plaintiffs' motion for reconsideration, R.2947, on the ground that if the U.S. Court of Appeals upholds the district court's March 31, 2009, order in Sixth Circuit Appeal No.

17

09-1424, the scope of the remaining class may be impacted, thereby affecting the propriety of intervention. R. 2949 (September 10, 2009 D. Ct. Order). More specifically, the district court stated that the motion for reconsideration was denied because "it is prudent to await the decision of the Court of Appeals, so that all parties will have the benefit of that ruling before addressing the issues raised by Plaintiff's motion . . . ." *Id.*

The district court therefore did not consider on the merits the requirements of Rule 24, opting instead to deny the motion without prejudice to refiling. This decision, however, is not a "final decision" under 28 U.S.C. § 1291 because it does not "end[] the litigation on the merits." *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999). It also does not fall within the collateral order doctrine, a "practical construction" of section 1291, because it does not "conclusively determine the disputed question" of whether the individuals named in the motion may be added as new named plaintiffs. *Will v. Hallock*, 546 U.S. 345, 349–50 (2006); *see also Moldowan v. City of Warren*, 578 F.3d 351, 368 (6th Cir. 2009). Indeed, the district court expressly contemplated the possibility of "renewal of the motion following the ruling and mandate of the Court of Appeals." R.2949. Lastly, the decision below does not present issues that are "inextricably intertwined with an independently appealable issue," *see Turi v. Main Street Adoption Services, LLP*, --- F.3d ----, No. 09-2229, 2011 WL 744154, at *4 (6th Cir. March 4, 2011), and it does not fall within the narrow set of appealable orders listed in 28 U.S.C. § 1292. As a result, we lack jurisdiction to review the district court's denial without prejudice of the plaintiffs' motion to add new named plaintiffs.

## IV.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court terminating all injunctive relief relating to the mental-health provisions of the Consent Decree.  We also hold that we lack jurisdiction to consider the district court's denial without prejudice of the motion to add new named plaintiffs.